Rich Curtner
Federal Defender
Daniel Poulson
Legal Research and Writing Specialist
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JASON M. THOMPSON,<br><br>                Petitioner,<br><br>  vs.<br><br>JOHN CONANT,<br><br>                Respondent. | NO. 3:14-cv-00256-SLG-KFM<br><br>**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254** |

Petitioner Jason Thompson, an inmate at Goose Creek Correctional Facility in Wasilla, by and through counsel hereby files his first amended petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254(d).

//

//

//

//

## I. FACTS AND PROCEDURAL HISTORY

### A. Evidence at Trial

In the summer of 2006, Jason Thompson met A.D., a teenaged girl, through mutual friends.[1] At the time they met, Thompson was 18 years old. A.D. told Thompson that she was going into the 9th grade and represented herself as being at least 15 years old.[2] In fact, A.D. was 13 years old. She continually lied about her age to both Thompson and others.[3] Thompson and A.D. began a dating relationship which at some point turned into a consensual sexual relationship.[4] Because A.D.'s mother was under court-ordered electronic monitoring for an unrelated criminal case, she was unable to regularly supervise her daughter and A.D. would repeatedly sneak out of the home to meet with Thompson.[5] A.D.'s mother became concerned about her daughter's safety and eventually contacted the police. After several missed calls, A.D.'s mother met with Alaska State Trooper Nathan Bucknall on October 13, 2006.[6] Based on that meeting, Bucknall obtained a 10-day <u>Glass</u>[7] warrant authorizing the surreptitious monitoring of phone calls between Thompson and A.D.'s mother. He directed A.D.'s mother to record a phone conversation with Thompson in the hopes of eliciting incriminating statements about his relationship with A.D. Bucknall provided A.D.'s mother with a recording device for this purpose and gave her some basic instructions on the device's operation. Although a law enforcement officer typically supervises the execution of a <u>Glass</u> warrant, Bucknall chose to allow A.D.'s mother to

---

[1] Tr. 352-357.
[2] Tr. 357.
[3] Tr. 569-572, 420-421, 450-452. To commit the offense of sexual abuse of a minor in the second degree, there must be at least a four-year age difference between the offender and the victim. See AS 11.41.436(a) ("…being 17 years of age or older, the offender engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least four years younger than the offender").
[4] Tr. 359-360, 374.
[5] Tr. 567-569, 581-582, 898-899.
[6] Tr. 650-657.
[7] <u>State v. Glass</u>, 583 P.2d 872 (Alaska 1978) (holding that, under the Alaska Constitution, the police must obtain a warrant before electronically monitoring or recording a private conversation, even when one or more participants to the conversation consents to the police surveillance).

execute the warrant unsupervised.[8] He explained that he would pick up the recording device after the Glass warrant expired.

According to Bucknall's testimony at trial, he next spoke with A.D.'s mother on October 17 and she indicated that she had recorded two conversations with Mr. Thompson.[9] Bucknall told A.D.'s mother that he would be collecting the recording device and the recordings the following week. However, A.D.'s mother resisted turning over the recordings. After several unsuccessful attempts, Bucknall was finally able to reach her on October 25. A.D.'s mother refused to turn over the recordings.[10] Bucknall told her to think the matter over. Two days later, she contacted Bucknall and relinquished the tapes to him that same day.[11]

The tapes documented two conversations. One of the conversations was only partially recorded. During the conversations, Thompson seemed to admit to having sexual encounters with A.D. as well as knowing her true age.

Based in large part on the recordings, Bucknall applied for a search warrant of Thompson's house. He served the warrant on November 2, 2006 and arrested Thompson that same day.[12] On November 9, 2006, Thompson was indicted on ten counts of sexual abuse of a minor in the second degree. Each count corresponded with an alleged act of sexual intercourse with A.D.

Thompson pled not guilty and was appointed counsel through the Public Defender Agency. The defense filed a notice that it would be raising a mistake of age defense.[13] Trial began on May 22, 2007. Prior to opening statements, Thompson's attorney filed a motion in

---

[8] Tr. 660.
[9] Tr. 665.
[10] Tr. 673-674.
[11] Id.
[12] Tr. 678.
[13] AS 11.41.436(a)(1).

*Jason M. Thompson v. John Conant*
Case No. 3:14-cv-00256-SLG-KFM                                                                                       Page 3

Case 3:14-cv-00256-SLG   Document 19   Filed 08/31/15   Page 3 of 9

limine arguing that the tape recordings were not reliable and lacked proper authentication because they had not been monitored by a law enforcement officer to establish the relevant dates or proper chain of custody.[14] The trial court denied the motion, and both tape recordings were played for the jury.

At trial, A.D.'s mother testified that she thought she had recorded only one conversation.[15] She did not recall the exact dates that the phone calls took place, and testified that they took place "in October … or maybe even November" 2006.[16] She additionally testified that she had problems recalling dates.[17] Consequently, the government laid the foundation for the tapes' admission primarily through Trooper Bucknall. However, neither Bucknall nor A.D's mother could offer testimony specifically identifying when the conversations took place.

The jury was unable to reach a verdict on the first nine counts, but returned a verdict of guilty as to Count 10. That count corresponded with the act of sexual intercourse alleged to have occurred "on or about October 14, 2006."

### B. Appeal

On direct appeal, Thompson argued *inter alia*, that the admission of the tape recordings violated federal due process because the state had failed to lay an adequate foundation for their admission at trial. The Court of Appeals was unpersuaded and held that the state had provided sufficient evidence at trial establishing that the phone calls took place "sometime" between October 17 and October 27.[18]

---

[14] Exhibit A at 2 (defense motion in limine) (citing Lopez v. United States 373 U.S. 427, 440 (1963)).
[15] Tr. 509-520.
[16] Tr. 327-328, 484-488, 492.
[17] Tr. 584.
[18] Thompson v. State, 210 P.3d 1233, 1236 (Alaska App. 2009).

### C. State Post-Conviction Relief

After Thompson's direct appeal concluded, Thompson learned that Trooper Bucknall and the trial prosecutor [19] had been involved in a covert sexual relationship during the investigation. In addition, Thompson learned that following an internal inquiry conducted by the state, the two were ordered not to work on cases together. This information was never disclosed to the defense. On December 18, 2009, Thompson filed an application for post-conviction relief in state Superior Court. In his amended application, filed on May 17, 2010, Thompson argued that the withheld evidence was material and exculpatory. Specifically, Thompson argued that the sexual relationship would have given Trooper Bucknall a motive to fabricate evidence in order to appease the prosecutor and obtain a conviction. The State of Alaska moved for judgment on the pleadings, arguing that even if the sexual relationship existed, its disclosure at trial would not have affected the outcome of the proceedings. The Superior Court agreed. On June 26, 2011, the court dismissed the matter for failure to state a prima facie case.

Thompson appealed. In his opening brief with the Alaska Court of Appeals, he offered two theories as to why the government's failure to disclose the existence of the sexual relationship deprived him of a fair trial. First, he argued that it violated his right to effective assistance of counsel. He drew an analogy to Ake v. Oklahoma, which holds that the government must provide a defendant with the resources necessary for an adequate defense. Thompson argued that the concealed information was necessary to competently defend against the charges, and that in its absence his attorney was rendered "involuntarily ineffective."[20] In his second claim, Thompson argued that the state's actions violated due process. He argued that the sexual relationship constituted material impeachment evidence

---

[19] While Mr. Thompson's post-conviction relief matter was on appeal, the prosecutor filed a letter with the Court of Appeals. The prosecutor did not dispute the existence of the relationship but requested that her name not be disclosed in any opinion to avoid professional embarrassment and harassment. Mr. Thompson will abide by that request.
[20] 470 U.S. 68 (1985).

*Jason M. Thompson v. John Conant*
Case No. 3:14-cv-00256-SLG-KFM                                                                                          Page 5


Case 3:14-cv-00256-SLG   Document 19   Filed 08/31/15   Page 5 of 9

and that its suppression violated clearly-established federal law which requires the government to disclose all material and exculpatory evidence to the defense. See United States v. Bagley, 473 U.S. 667 (1985) and Brady v. Maryland, 373 U.S. 83 (1963).

The Court of Appeals rejected the merits of both claims. The court affirmed the Superior Court's finding that Thompson had not shown that the information was material under the Bagley test because he failed to show "a reasonable likelihood" that the concealed evidence would have affected the jury's verdict. In particular, the dispute at trial was whether Thompson had reasonably believed A.D. was old enough to consent to sexual activity. Because the tape recordings established Thompson's knowledge of A.D.'s true age, the Court of Appeals reasoned that the evidence concerning Bucknall's bias would not have affected the outcome of the trial.[21]

In his petition for hearing filed with the Alaska Supreme Court, Thompson renewed his argument that the information was material and that the failure to disclose it to the defense violated due process under Bagley and Brady.[22] The Alaska Supreme Court denied the petition on July 7, 2014.

### D. Habeas proceedings

On December 20, 2014, Mr. Thompson, appearing pro se, filed a petition for writ of habeas corpus in U.S. District Court for the State of Alaska, pursuant to 28 U.S.C. § 2254(d).[23]

## II. CLAIMS PRESENTED

Mr. Thompson hereby submits the following claims for relief:

1. The Alaska Court of Appeals unreasonably applied clearly-established Supreme Court precedent when it adjudicated Thompson's post-conviction claim that the

---

[21] Thompson v. State, 2013 WL 6576729 (Alaska App. 2013).
[22] Exhibit B (Petition for review) at 3.
[23] Doc. 1.

*Jason M. Thompson v. John Conant*
Case No. 3:14-cv-00256-SLG-KFM                                                                                                    Page 6

Case 3:14-cv-00256-SLG   Document 19   Filed 08/31/15   Page 6 of 9

state withheld material and exculpatory evidence in violation of <u>Brady v. Maryland</u> and <u>Bagley v. United States</u>. 28 U.S.C. § 2254(d)(1).

2. The Court of Appeals' adjudication of this question rested on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(2).

As the Court of Appeals indirectly conceded, the evidence concerning the sexual relationship between Trooper Bucknall and the prosecutor would have been relevant to establishing the officer's bias and credibility. However, when the Court of Appeals adjudicated Mr. Thompson's <u>Brady</u> claim, it framed the inquiry as whether the remaining inculpatory evidence was sufficient to support a conviction. This is not the correct standard. <u>See</u> <u>Kyles v. Whitley</u> 514 U.S. 419, 434-35 (1995) (to establish materiality under <u>Bagley</u> a defendant need not demonstrate that the remaining evidence was insufficient to support a conviction). Rather, because the withheld evidence "undermine[s] confidence in the verdict," Mr. Thompson is entitled to relief.

## III. RELIEF REQUESTED

Accordingly, Mr. Thompson respectfully requests that this Court:

1. Issue a writ of habeas corpus to have Mr. Thompson brought before the Court so that he may be discharged from his unconstitutional confinement;

2. Conduct a hearing at which proof may be offered concerning the allegations in this petition and any affirmative defenses raised by the Respondents;

3. Grant discovery. When the Court of Appeals denied Mr. Thompson's post-conviction relief appeal, it assumed without deciding the existence of the sexual relationship between the prosecutor and Trooper Bucknall (Mr. Thompson's PCR counsel confirmed the existence of the relationship). However, because the Court of Appeals applied an incorrect legal standard when it assessed the materiality of the evidence, this court will need to independently confirm what impact the

evidence would have had on the outcome of trial. Accordingly, absent any stipulation by Respondent, Mr. Thompson has established good cause to warrant discovery pursuant to Rule 6(a) of the Habeas Rules.[24] Mr. Thompson hereby requests that the following materials be provided to the court for in camera inspection and review:

    a.) Any records of communications between Trooper Bucknall and the prosecution.

    b.) Records from any internal inquiry by the State of Alaska concerning Trooper Bucknall and the trial prosecutor

    c.) Trooper Bucknall's personnel file

4. Allow petitioner to amend his petition;
5. Vacate the trial court convictions and remand for a new trial; and
6. Grant any other relief the Court deems just and proper.

DATED at Anchorage, Alaska this 31st day of August, 2015.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Rich Curtner
Federal Defender
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:    907-646-3400
Fax:    907-646-3480
E-Mail:    rich_curtner@fd.org

---

[24] See, e.g., Bracy v. Gramley, 520 U.S. 899, 901, 117 S. Ct. 1793, 1795, 138 L. Ed. 2d 97 (1997) (Habeas petitioner convicted before judge who was himself later convicted of taking bribes from defendants in criminal cases showed "good cause" for discovery on his due process claim of actual judicial bias in petitioner's own case, in which judge was not bribed).

/s/ Daniel Poulson
Legal Writing and Research Specialist
Alaska Bar No. 0911073
601 West Fifth Avenue, Suite 800
Anchorage, AK  99501
Phone:      907- 646-3400
Fax:        907-646-3480
E-Mail:     daniel_poulson@fd.org

CERTIFICATE OF SERVICE:
I certify that on August 31, 2015, a copy of the *Petitioner's First Amended Petition for Writ of Habeas Corpus* was served electronically on:

Michael Sean McLaughlin
Office of Special Prosecutions & Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501
Email: mike.mclaughlin@alaska.gov

/s/ Rich Curtner