IN THE SUPREME COURT FOR THE STATE OF ALASKA

Jason Thompson,

    Petitioner,

    vs.

STATE OF ALASKA,

    Respondent.

Supreme Court No. 15445
Court of Appeals No. A-11066
Trial Court No. 3PA-09-2586 CI

## PETITION FOR HEARING

**VRA CERTIFICATION**
This document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

### PRAYER FOR REVIEW

Petitioner Jason Thompson asks this court to exercise its power of discretionary review under Alaska Rule of Appellate Procedure 302(a)(1). He asks this court to review the attached court of appeals opinion, *Thompson v. State*, Court of Appeals MO&J No. 6000, Alaska App., December 11, 2013 (as revised on rehearing).

### STATEMENT OF FACTS

The statement of facts is set forth in the attached opinion from the court of appeals. The procedural basis of the case is also set forth in detail in that opinion.

Petitioner accepts the lower court's assessment as accurate, but some points bear further discussion.

Mr. Thompson was convicted of sexual abuse of a minor, for his relationship with a thirteen year old girl, when he himself was eighteen. Slip op. at 1-2. The court of appeals stated, correctly, that the primary evidence that Mr. Thompson knew that the girl was under age came from two tape recordings made by the girl's mother, under the authority of a Glass warrant, and under the tutelage (but not the direct supervision) of a state trooper. Slip op. at 6-7.

In his post-conviction application Mr. Thompson alleged that at the time that this investigation took place, the state trooper and the prosecutor were involved in a sexual relationship. The state did not disclose the relationship to Mr. Thompson's lawyer. The application alleged that the failure to disclose violated Mr. Thompson's due process rights, because the fact of the relationship constituted a potentially important avenue for the impeachment of the trooper. Slip op. at 2.

The superior court held this claim to be facially insufficient, because even if these allegations were assumed to be true, the information regarding the relationship would

not have altered the jury's verdict, in view of the otherwise "overwhelming" evidence. Slip op. at 4, 8.

## ISSUE PRESENTED FOR REVIEW

Did the court of appeals err in affirming the trial court, where the court's analysis approves the erosion of a defendant's right to the pretrial production of exculpatory evidence?

## STATEMENT OF POINT RELIED UPON FOR REVERSAL OF THE INTERMEDIATE APPELLATE COURT'S DECISION

*United States v. Bagley*, 473 US 667, 1985) stands for the proposition that a conviction should be reversed if the state has failed to disclose material exculpatory evidence. Evidence is "material" when "there is a *reasonable probability* that, had the evidence been disclosed to the defense, the outcome would have been different." 473 US at 682 (emphasis supplied). *See also Brady v. Maryland*, 373 US 83 (1963).

In *Salinas v. State,* 373 P.2d 512 (Alaska 1962) this court propounded a rule for use in a related situation, where a defendant seeks a new trial on the ground of newly-discovered evidence. In such a case a defendant must show that the new evidence is not "merely cumulative or impeaching." *Id.* at 514.

In *Mooney v. State,* 167 P.3rd 81 (Alaska App. 2007), the court of appeals elaborated on *Salinas,* explaining that

> [W]hen *Salinas* speaks of evidence that is "merely cumulative or impeaching", it is referring to evidence that is unlikely to lead to a different verdict because it either is cumulative of the evidence previously available, or it simply reinforces the types of impeachment that were previously available. If, on the other hand, the newly discovered evidence undermines the government's case in a new and significant way, then the evidence is not "merely impeaching" — and the trial judge must determine whether this evidence, if presented at a new trial, *would probably* lead to a different verdict.

*Id*. at 91 (emphasis supplied).

The court of appeals' conclusion in the case at bar, that the evidence of the sexual relationship was not "material," as the term is defined in *Bagley,* ignores several facts.

As noted, the defense at trial was one of reasonable mistake of age. Slip op. at 6; R. 00103. It is true that Mr. Thompson made inculpatory recorded statements, but it is also true that anything which could diminish the impact of Mr. Thompson's recorded statements would, of necessity, increase the probability that jurors would find reason to doubt the extent of his actual knowledge. Anything leading to significant impeachment of the trooper is thus evidence which "undermines the government's case in a new and significant way." *Mooney, supra.*

A person is not guilty of sexual abuse of a minor merely for *suspecting* that the victim could be underage, if it was nevertheless reasonable to believe she was not. To the extent the jury discounted the recorded statements, they would, to the same extent, more probably than not believe that Mr. Thompson's conduct did not negate what he claimed was his reasonable belief as to the victim's age.

And after hearing the evidence, the jury was unable to reach a verdict on all but one of the counts alleging sexual abuse of a minor. The reason for this result is unclear, but there are multiple possible explanations: some of the jurors may have been unpersuaded that Mr. Thompson had engaged in sexual intercourse with the victim in the manner and at the times alleged, some might have been unpersuaded that the acts occurred at all, and some might have been unpersuaded that the victim was under 15. And of course, some may even have accepted the defense as to one or more counts; they might have been persuaded that Mr. Thompson made a reasonable mistake.

Regardless of rationale, however, the jury obviously disagreed with the trial and appellate court's current position regarding the incontestable quality of Mr.

Jason Thompson v. State
Supreme Court No.15445

Page 5 of 8

Petition for Hearing

Exhibit B, Page 5 of 8

Case 3:14-cv-00256-SLG   Document 19-2   Filed 08/31/15   Page 5 of 8

Thompson's guilt. To the contrary, some jurors clearly felt that the state's case was, by and large, a failure.

The trooper's credibility was a significant issue in the case, because he had worked hand in hand with the victim's mother to generate the recordings on which the state placed so much reliance. And that credibility was undeniably open to attack, on the basis of his relationship with the prosecutor (had it been known to the defense).

The trial and appellate courts seemingly fail to recognize that no juror could be required to believe that the relationship did *not* affect the investigation, once that impeachment evidence was offered. Therefore it is an open question whether the impeachment of the trooper, once offered, would have undermined the state's case in a "new and significant way." But the jury was denied an opportunity to evaluate the evidence, because it was never disclosed to the defense.

The trooper's credibility (and the degree to which his credibility was relevant to an assessment of the victim's mother's credibility) were plainly issues for the criminal trial jury. The post-conviction trial court should not have second-guessed what impact the disclosure of the sexual relationship might have had on the jury; the only question

Jason Thompson v. State
Supreme Court No.15445

Page 6 of 8

Petition for Hearing

Exhibit B, Page 6 of 8

Case 3:14-cv-00256-SLG   Document 19-2   Filed 08/31/15   Page 6 of 8

is whether it is reasonably possible that the evidence would have affected the verdict.  *See James v. State,* 84 P.3d 404, 407-8 (Alaska 2004).

In view of the centrality of the tape recorded evidence, the trooper's role in obtaining it, and the overall weakness of the case (as evidenced by the verdicts), it was a fair assertion that it was reasonably possible that disclosure could have led to a different result.

The decision in this case is thus at odds with the principle articulated in *Mooney,* that newly-discovered impeachment evidence which would undermine the government's case in a "new and significant way" offers a basis for a collateral attack on a conviction.  Mr. Thompson should have been given an opportunity to develop and present his alleged newly-discovered impeachment evidence in a full adversarial process.  Dismissal of his application on the pleadings was error.

**NECESSITY OF REVIEW**

Review by this court is justified under Appellate Rule 304(a), in order to clarify and resolve the tension between the decision in this case and the *Mooney* court's holding that newly-discovered impeachment evidence which could undermine the government's case in a "new and significant

way" can support a collateral attack on a conviction. The trial court and court of appeals' decisions failed to respect Mr. Thompson's right and need for the full disclosure of potentially exculpatory information before trial.

Mr. Thompson therefore asks this court to grant his petition for hearing and to allow him to be heard on this issue.

Date: _____

| **CERTIFICATE OF SERVICE**<br>I certify that a true and correct copy of the foregoing was provided to each attorney or party of record as follows:<br>☐ Mailed to Michael McLaughlin, Esq., OSPA<br>Date: _____ By: _____ | By: _____<br>David K. Allen, ABA #9904005<br>Attorney for Petitioner |
|---|---|